IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHARIF HAMZAH,

                              Plaintiff,

            v.

UNITED STATES DEPARTMENT OF EDUCATION,

                              Defendant.

OPINION and ORDER

22-cv-385-jdp

---

Plaintiff Sharif Hamzah, proceeding without counsel, filed this lawsuit against the United States Department of Education and other defendants, alleging that they failed to discharge fraudulent student loans taken out in Hamzah's name. In a previous order, I granted summary judgment to defendants on most of Hamzah's claims. Dkt. 48. The only claim that remains is an Administrative Procedure Act (APA) claim against the Department of Education for arbitrarily and capriciously failing to discharge the student loans.

The parties agreed that the merits of the APA claim can be resolved on summary judgment based on the written briefs and the administrative record. *See* Dkt. 58 (setting a briefing schedule on the merits of the APA claim).[1] The matter is fully briefed and ready for decision. I conclude that the Department of Education conducted an adequate investigation and gave a reasonable explanation for not discharging Hamzah's loans, which is enough to meet the low standard for review of agency decision under the APA. I will grant summary judgment to the Department of Education on Hamzah's APA claim. This case will be closed.

---

[1] Neither side formally moved for summary judgment, but the court can nevertheless grant summary judgment if the parties have been given "notice and a reasonable time to respond." Fed. R. Civ. P. 56(f). The parties' agreement to a briefing schedule on the merits of the APA claim satisfies the Rule 56(f) requirements.

BACKGROUND

According to Department of Education records, Sharif Hamzah received the following student loans in the 1980s and 1990s:

- 1983: one Federal Family Education Loan (FFEL) totaling $2,500 to attend the University of Minnesota.

- 1984 and 1985: three FFELs totaling $6,865 to attend the University of Nebraska.

- 1992 and 1993: three FFELs totaling $8,000 to attend the University of Minnesota.

- 1993: a Federal Perkins Loan totaling $2,400 to attend the University of Minnesota.

R. 24.[2] These loans were eventually declared in default and turned over to the Department of Education's Default Resolution Group.

In January and February 2022, Hamzah filed three applications for discharge of his University of Minnesota loans, asserting that they had been obtained without his knowledge or authorization.[3] Hamzah filed each application using a different process. First, he completed the false-discharge application, which is intended for borrowers who believe that the educational institution signed for the loans without their authorization. R. 13-14. Second, he completed the department's forgery-discharge application, which is intended for borrowers who

---

[2] Record citations are to the administrative record located at Dkt. 15. The court allowed Hamzah to supplement the administrative record with the documents at Dkt. 18-1, Dkt. 18-2, Dkt. 38, and Dkt. 38-1. *See* Dkt. 64. The court will refer to these supplementary documents using their CM/ECF docket citations.

[3] There are documents in the record suggesting that these were not the first discharge applications that Hamzah filed. *See, e.g.,* R. 26–27 (December 7, 2021, letter from the department to Hamzah requesting additional documentation related to an earlier loan discharge application). Neither party refers to an earlier application in their briefs or proposed findings of fact. The department's response suggests that the earlier discharge application provided much the same information as the later applications.

believe that someone other than an educational institution signed for the loans. R. 7–12. Third, he completed the department's dispute form, which is a general form to submit disputes to the Default Resolution Group. R. 15–21.

Hamzah's discharge applications all provided similar reasons for why he believed the loans on his account were fraudulent. Hamzah explained that the loans listed on his department account "do not have accompanying promissory notes to verify the loans were issued or received by me." R. 11. He said that he had requested the promissory notes from the department, but that the promissory notes the department sent him "have no relation or correlation" to the loans in his account. R. 17–18. Hamzah asserted that "[i]t appears that a signature resembling mine was pasted on the documents," R. 14, and that "[i]t appears that someone with the Dept. of Education with access to data entry either mistakenly or intentionally added these loans to my account." R. 11. He attached a copy of his driver license and social security card as signature samples. R. 21.

In response to Hamzah's discharge applications, the department requested additional evidence from Hamzah, specifically: (1) signature samples, two of which needed to be dated within one year of the disputed promissory notes; (2) a court verdict or judgment establishing that Hamzah was the victim of identity theft; (3) a legible copy of a government identification card; (4) a statement from a handwriting expert; (5) proof of residency at the time the loans were made; (6) a copy of a police report or any other filed report for identity theft; and (7) any other evidence to support Hamzah's application. R. 22–23. Hamzah did not submit any additional evidence. The department also contacted the University of Minnesota to request Hamzah's enrollment information; a university official replied, "As this person attended in the 1980's, we have very little information on him." R. 28. The university attached Hamzah's

3

cumulative statistics, which listed the number of credits he took and his grade point average. R. 30–31. Finally, the department obtained a Lexis Nexis Risk Solutions Accurint report for Hamzah, which is a report of information related to Hamzah, including current and previous addresses, biographical data, and associated individuals. R. 32–40.

On April 22, 2022, the department issued a final decision denying Hamzah's request for discharge of his student loans. The department explained, "based upon the preponderance of the evidence, [] the signature(s) submitted with your application match the signature(s) on the Promissory Note signed to obtain the funds necessary to attend The University of Minnesota–Twin Cities." R. 3–4. The department told Hamzah that it would reconsider its decision if Hamzah retained a handwriting expert who determined that the signatures on the promissory notes were not his. *Id.* Hamzah responded with a letter threatening litigation if the department did not discharge the fraudulent loans. Dkt. 19. The department refused to reconsider its decision, so Hamzah filed this lawsuit.

ANALYSIS

This is an action for judicial review under the Administrative Procedure Act. 5 U.S.C. §§ 701–06. The Act itself does not give federal courts jurisdiction to review agency action, but in conjunction with 28 U.S.C. § 1331, the court has subject matter jurisdiction. *Califano v. Sanders,* 430 U.S. 99, 105 (1977).

As an initial matter, there is a question whether this case is moot. In July 2025, Hamzah notified the court that the department had agreed to discharge four loans in his name. Dkt. 74. Hamzah did not explain whether this decision meant that all the loans at issue in this case have now been discharged. The department responded to Hamzah's filing, explaining that Hamzah

4

had received an administrative discharge of four loans for a reason other than false certification or forgery. Dkt. 75. But the department said that Hamzah's federal Perkins loan was not discharged, so there remains a $4,977 balance that relates to his APA claim. *Id.* That means that Hamzah's case is not moot, so I will proceed to the merits of his APA claim.

The APA "provides a right to judicial review of all final agency action for which there is no other adequate remedy in a court." *See Bennett v. Spear*, 520 U.S. 154, 175 (1997); 5 U.S.C. § 704. In an action for review of final agency action, "the ultimate question is whether that action is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Mittelstadt v. Perdue*, 913 F.3d 626, 633 (7th Cir. 2019) (quoting 5 U.S.C. § 706(2)). The court's review is deferential; it "simply ensures that the agency . . . has reasonably considered the relevant issues and reasonably explained the decision." *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 75 F.4th 743, 749 (7th Cir. 2023); *see also Gripum, LLC v. U.S. Food & Drug Admin.*, 47 F.4th 553, 558 (7th Cir. 2022) ("To meet the APA's arbitrary-and-capricious standard, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."). The agency's factual findings must be supported by substantial evidence. *Brousil v. U.S. Dep't of Lab., Admin. Rev. Bd.*, 43 F.4th 808, 811 (7th Cir. 2022) (citing 5 U.S.C. § 706(2)(E)). This standard is also deferential: it is satisfied if the factfinder "relied on such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Id.*

I conclude that the department's decision to deny Hamzah's discharge applications was not arbitrary and capricious and was supported by substantial evidence. Under the regulations in effect at the time of Hamzah's applications, a borrower seeking discharge of his loans because

of false certification had to provide signature samples or evidence of identity theft to prove that he did not authorize the loans. 34 C.F.R. § 682.402(e) (2020); § 685.215(c) (2020). Hamzah provided signature samples, but the agency reasonably concluded that those samples matched the signatures on the promissory notes associated with Hamzah's loans. Even Hamzah admitted that the signatures were similar; he wrote on one of his discharge applications, "[i]t appears that a signature resembling mine was pasted on the documents." R. 14. Hamzah provided no other evidence that the loans were fraudulent, so the agency reasonably concluded that he had not met his burden to prove fraud.

Further, the administrative record contains substantial evidence other than the signature samples that Hamzah authorized the loans at issue in this case. As part of its investigation, the agency obtained a Lexis Nexis Risk Solutions Accurint report, which listed current and former addresses for Hamzah and individuals with whom Hamzah was associated. As the agency points out in its brief, the addresses listed for Hamzah in the promissory notes are consistent with Hamzah's former addresses in the Accurint report. *See* R. 41–48; 53–68. Several of the promissory notes also list a woman named Helen Echols as Hamzah's parent/guardian. *E.g*, R. 45. Echols also appears in the Accurint report as a person associated with Hamzah. R. 36. In the absence of any evidence to the contrary, the consistency of the promissory notes and the Accurint report is substantial evidence that Hamzah filled out and signed the promissory notes.

Hamzah argues that the department missed the point by focusing on the content of the promissory notes. He says that even if it appears that he signed the promissory notes, those promissory notes don't match the loans currently listed on his account. To support this point, Hamzah provided a screenshot of his Department of Education "loan summary" as of February

13, 2022. Dkt. 38.[4] The loan summary is a page on Hamzah's loan account that lists an identification number, current principal amount, and current interest amount for each of Hamzah's outstanding loans. Hamzah says that the identification numbers listed on the loan summary for each of his loans don't match any identification numbers on the promissory notes, and that the amount of principal on the loan summary doesn't match the amount of principal on the promissory notes. Hamzah argues that because the loan summary doesn't match the promissory notes in these two respects, the department cannot connect the loans listed on his account to him. He says that the department's failure to consider the loan summary evidence was arbitrary and capricious.

I conclude that the department did not err by failing to consider the information on the loan summary. The APA does not require agencies to consider every piece of evidence presented when making a factual finding; it only requires the agency to "reasonably consider[] the relevant issues and reasonably explain[] the decision." *Brousil v. United States Dep't of Lab., Admin. Rev. Bd.*, 43 F.4th 808, 813 (7th Cir. 2022); *Smith v. Garland*, 103 F.4th 1244, 1252 (7th Cir. 2024). Hamzah's explanation about the relevancy of the loan summary simply doesn't withstand scrutiny. As the agency explains in its brief, there is a ready explanation why the current identification numbers are different from the identification numbers on the promissory notes: the loans were originally issued by private lenders and the identification number changed when the loans were reassigned to the department. Dkt. 67, at 14. Nor is it odd that the amount

---

[4] Hamzah also filed documents labelled "loan summary" at Dkts. 18-1, 18-2, and 38-1, but these all seem to be the same document as Dkt. 38. Dkt. 38 is the easiest to read, so I will use that document when referring to the loan summary.

of the principal changed.[5] The department explains that a borrower's principal can change because interest is capitalized when a borrower defaults or the loans go into forbearance or deferment. *Id.*[6] Hamzah doesn't meaningfully dispute these points. In his reply brief, he asserts that the amount of principal on a loan "remains constant and must be traceable to an original promissory note," Dkt. 69, at 3, but he doesn't provide any evidence to support that point, and it is inconsistent with department regulations. 34 C.F.R. § 685.202(b). The information on the loan summary is not relevant to whether fraudulent student loans were taken out in Hamzah's name, so the department's failure to consider it was not arbitrary and capricious.

Hamzah also challenges the department's procedures for investigating his loan discharge applications. In his response to the department's proposed findings of fact, he states that the department's request for him to provide supporting evidence that his loans were fraudulent "placed an undue burden on him as a pro se litigant." Dkt. 72, ¶¶ 20, 39. I take Hamzah to be saying that the department should have sought evidence supporting Hamzah's claim itself, instead of requiring Hamzah to provide it. But "courts are not in the business of inventing procedures that agencies must follow; it is enough to enforce the statutes and regulations on the books." *Fleszar v. U.S. Dep't of Lab.*, 598 F.3d 912, 914 (7th Cir. 2010). Hamzah had the burden under department regulations to produce evidence to support his allegations that the

---

[5] The difference between the principal listed on the loan summary and the promissory notes is not substantial. The promissory notes have principal amounts between $800 and $4,000, and the loan summary lists the principal of Hamzah's loans as being between $1,000 and $4,300. R. 41–48; 53–68; R. 38.

[6] The department explained in its brief how interest capitalization can change a borrower's principal, but it did not cite any evidence. But the department's procedure for interest capitalization is governed by federal regulations, 34 C.F.R. § 685.202(b), so I will take judicial notice of that fact.

loans on his account were fraudulent. Hamzah did not satisfy that burden, so the department reasonably declined to discharge the loans. The department's handling of Hamzah's loan discharge applications did not violate the APA, so I will grant summary judgment on that claim to the department. My decision resolves the only remaining claim in this case, so judgment will be entered for defendant and this case will be closed.

ORDER

IT IS ORDERED that:

1.  Under Federal Rule of Civil Procedure 56(f), summary judgment is GRANTED to defendant United States Department of Education on plaintiff Sharif Hamzah's Administrative Procedure Act claim.

2.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered March 19, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge